UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

DIXIE RICE AGRICULTURAL                        CIVIL ACTION
CORPORATION, INC.

VERSUS                                         NO. 05-1859

HEC PETROLEUM, INC. ET AL                      SECTION  "J" (4)


**ORDER AND REASONS**

The following defendants' motions are before the court: HEC
Petroleum, Inc. and Dow Chemical Co.'s Motion to Strike Amended
Complaint (Rec. Doc. 88); Apache Corp. and APD Co.'s Motion to
Dismiss Plaintiff's Second Amended and Restated Complaint (Rec.
Doc. 90); Kerr-McGee Chemical Worldwide's Motion for More
Definite Statement (Rec. Doc. 91); Shell Oil Co.'s Motion for
More Definite Statement (Rec. Doc. 93); Noble Energy, Inc.'s
Motion to Dismiss Case or to Strike Amended Complaint (Rec. Doc.
104); ConocoPhillips Co.'s Motion to Dismiss Case or for a More
Definite Statement (Rec. Doc. 109); and Meridian Resource &
Exploration's Motion to Dismiss Second Amended Complaint (Rec.
Doc. 114). These motions are opposed. (Rec. Doc. 113). After
considering the memoranda of counsel, the record, and the

applicable law, the Court finds that these motions should be
DENIED.

### FACTUAL AND PROCEDURAL BACKGROUND

Dixie Rice Agricultural Corp., Inc., ("Dixie"), is the land
or surface owner of the piece of property in Terrebonne Parish
that is the subject of this lawsuit.  Dixie alleges that each
defendant is a lessee and/or successor-in-interest or assignee to
one or more of three oil and gas leases between Dixie and/or its
predecessors and defendants and/or their predecessors.  Shell,
SWEPI, Meridian, Kerr-McGee and Cabot (or their predecessors)
are, or have at one time been, lessees under a mineral lease (the
"Barnsdall Lease") granted by the then fee title owner to
Barnsdall Oil Company in 1935.  HEC Petroleum, Apache Corp., and
APD Co. are lessees, assignees and/or successors-in-interest
under a mineral lease (the "Quintana Lease") between Quintana
Petroleum Corp. and Southdown, Inc. in 1966.  In 1966 Southdown,
Inc. conveyed a mineral servitude and rights affecting the Dixie
property to Southdown Exploration, title to which eventually
vested with Noble Energy and ConocoPhillips. Finally, a third
mineral lease (the "Robertson Lease") was executed in 1970 in
favor of the then mineral servitude owner Corbin Robertson.
Apache Corp. and APD Co. are lessees, assignees and/or
successors-in-interest under the Robertson lease.

In June, 2005, defendants filed motions to dismiss the case, sever it, stay it, and/or require a more definite statement. (*See* Rec. Docs. 12, 28, 29, 30, 31, 33, 42, 43, 46, 55, and 56). This Court denied all of the motions except those seeking dismissal of premature claims and those calling for a more definite statement. (*See* Rec. Doc. 76). This Court found that plaintiff's prayer for certain injunctive remedies were premature while the leases were ongoing. This Court instructed the plaintiff to file a Second Amended Complaint clarifying what remedy was being sought and, to the extent possible, differentiating between the defendants' relations to the various leases and wells and their alleged roles in the damages. *See* Transcript attached as Ex. A to Pl.'s Opp.

## DISCUSSION

**A.  Motions to Strike Entire Pleading under Rule 12(e)**

*1.  Law*

Federal Rule of Civil Procedure 12(e) permits a party to move for a more definite statement when "a pleading to which a responsive pleading is permitted is so vague or ambiguous that a party cannot reasonably be required to frame a responsive pleading." Fed. R. Civ. P. 12(e). A party, however, may not use a Rule 12(e) motion as a substitute for discovery. *See Mitchell v. E-Z Way Towers, Inc.*, 269 F.2d 126, 132 (5th Cir. 1959). As a result of the liberal pleading standard set forth in Rule 8, Rule

12(e) motions are disfavored.  *See Mitchell*, 269 F.2d at 132.
Rule 12(e) is ordinarily restricted to situations where a
pleading suffers from "unintelligibility rather than want of
detail." 2A MOORE'S FED'L PRAC. ¶ 12.18[1], at 2389 (2d ed. 1985).

   *2.   Application*

    Except for defendant Meridian, whose motions are
particularly addressed below, the defendants do not significantly
differentiate their 12(e) and 12(b)(6) motions, except as to
punitive damages. The transcript of the hearing on the previous
group of motions indicates that the Court ordered an amended
complaint to clarify that certain injunctive remedies were
unavailable to the extent they were premature prior to the
termination of the leases or the ceasing of operations. Pl.'s Ex.
A at 36-37. These claims were dismissed. The other goal was to
"more clearly differentiate between these defendants and [who's]
related to what lease and what well, and what their respective
roles are or were, as you [plaintiff] allege them to be."  The
Court specifically suggested that this information might have to
await further discovery and that plaintiff was not required to
prove its case in the complaint. *Id.* at 37.

   Plaintiff filed an amended complaint eliminating the
premature claims and attempting to clarify which defendants had
interests in which leases, and which defendants had servitudes.

*See* 2d Am. Compl. ¶¶ 5-9. The plaintiff attempted to spell out more specifically how each defendant was connected to the land through which lease. On the whole however, there is not much more specific information provided in the second amended complaint than in the first.

Defendants (except Meridian) argue that absent specific allegations as to which defendants committed which specific actions they cannot reasonably be required to frame a responsive pleading. The fact that Meridian has filed an answer (Rec. Doc. 89) belies this argument. It is generally accepted that "[p]leadings need do little more than indicate generally the type of litigation that is involved." 2A MOORE'S FED'L PRAC. ¶ 8.03 at 8-10 (2d ed. 1985); *see also, e.g.*, 3 West's Fed. Forms, District Courts-Civil § 2924 (5th ed.) (exemplifying the minimal level of specification needed to state a claim against multiple defendants). Unless, there is a special statutory requirement for specific factual allegations (e.g. allegations of fraud) Rule 8's "'simplified notice pleading standard relies on liberal discovery rules and summary judgment motions to define disputed facts and issues and to dispose of unmeritorious claims.'" *Gen. Elec. Capital Corp. v. Posey*, 415 F.3d 391, 396 (5th Cir. 2005) (quoting *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 512 (2002) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957))). Because

defendants can reasonably be expected to answer this complaint, plaintiff's Second Amended and Restated Complaint satisfies Rule 8's notice pleading standard.

**B.    Motions to Strike or Dismiss Claims for Punitive Damages Under Rule 12(e) or 12(b)(6).**

*1.    Law*

The legal standards for evaluating Rule 12(e) motions is given above. When evaluating a Rule 12(b)(6) motion to dismiss for failure to state a claim, the Court must accept as true all well-plead allegations and resolve all doubts in favor of the plaintiff. *Tanglewood East Homeowners v. Charles-Thomas, Inc.*, 849 F.2d 1568, 1572 (5th Cir. 1988). A Rule 12(b)(6) motion should be denied unless "it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Id.* (quoting *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957)). Rule 12(b)(6) motions are disfavored and rarely granted. *Id.* (quoting *Sosa v. Coleman*, 646 F.2d 991, 993 (5th Cir. 1981)).

Louisiana Civil Code article 2315.3 allowed for exemplary or punitive damages. It was effective between 1984 and 1996 and only applies to conduct occurring during that time. *See Hazelwood Farm, Inc. v. Liberty Oil & Gas Corp.*, 844 So.2d 380, 391 (La. App. 3d Cir. 2003). Article 2315.3 expressly granted a right to a punitive award to any "plaintiff[ ] [whose] injuries were caused

6

by the defendant's wanton or reckless disregard for public safety in the storage, handling, or transportation of hazardous or toxic substances."

In order to obtain an award of exemplary or punitive damages under the code article, the plaintiff must satisfy four elements:

1) The defendant's conduct must be wanton or reckless;

2) The defendant's wanton or reckless conduct must create a danger to the public;

3) The defendant's wanton or reckless conduct must occur in the storage, handling, or transportation of hazardous or toxic substances;

4) The plaintiff's injury must be caused by the defendant's wanton or reckless conduct consisting of all of these elements. *In re Harvey Term Litigation*, 872 So.2d 584, 586 (La. App. 4th Cir. 2004). Furthermore, in order to state a cause of action for exemplary damages in state court, a plaintiff must plead facts which establish its cause of action during the effective period of article 2315.3. *Id.*

2.  *Application*

Defendants contest the sufficiency of plaintiff's pleading. First, they argue that plaintiff failed to allege "wanton or reckless disregard" as required by the statute. Plaintiff counters that it in fact alleges "knowing" conduct on part of the

7

defendants, which plaintiff argues is sufficient to state a claim for punitive damages. The Second Amended Complaint actually states in the disjunctive that "[d]efendants knew or should have known their exploration and production would result in contamination." 2d Am. Complaint ¶ 25(b). The complaint also alleges in conclusory fashion that "[d]efendants have breached the standards of conduct imposed by Louisiana Civil Code article 2315.3 (now repealed)." 2d Am. Complaint ¶ 30.

Likely, plaintiff's allegations would not satisfy the fact pleading requirements of a state court claim. *In re Harvey Term Litigation* disallowed punitive damages based on the insufficiency of the complaint. The complaint alleged knowing contamination "from at least 1997." Therefore it did not allege activity within the time period that article 2315.3 was effective, only the possibility of actions some time prior to 1997. 872 So.2d at 586-87. The complaint also alleged in conclusory fashion that during the effective period of article 2315.3 the defendant's conduct matched the elements of a punitive damages claim. The court held this insufficient because Louisiana requires fact pleading, although there is some support for the contention that "knowing" could satisfy the wanton recklessness requirement. *See id.*

However, as explained above, the federal rules only require notice pleading, not fact pleading as in state court. Although

8

plaintiff must eventually meet the substantive state law requirements to succeed in a claim for punitive damages, the Federal Rules of Civil Procedure, not state law, controls procedural requirements, such as sufficiency of pleading. Fed. R. Civ. P. 1 ("These rules govern the procedure in the United States District Courts in all suits of a civil nature"); 28 U.S.C. § 2072 (the Rules enabling Act: "All laws in conflict with such rules shall be of no further force or effect"); 28 U.S.C. § 1652 (state laws are rules of decision "except where the Constitution or treaties of the United States or Acts of Congress otherwise require or provide"); U.S. Constitution, Article VI ("This Constitution and the Laws of the United States which shall be made in pursuance thereof...shall be the supreme Law of the Land").

The defendants' arguments are off point in that they involve the substance of the claim and the requirements of Louisiana fact pleading. The Fifth Circuit very recently reinforced that punitive damages claims are no different than compensatory claims for purposes of Rule 8's federal pleading requirements. *Schexnayder v. Bonfiglio*, 2006 WL 25963, *2 (5th Cir. 2006) (unpublished opinion). "[Defendant] cites no Fifth Circuit (nor any circuit) precedent to support its position that punitive damages must be pled with specificity. Regardless, as the

district court noted, [defendant] received ample actual notice before trial that [plaintiff] was seeking punitive damages." *Id.* This case was for punitive damages pursuant to a Title VII sexual discrimination case, but the understanding of federal notice pleading requirements applies equally to the present case.

Defendants cite authority that simple notice is not sufficient. For example, *Guidry v. Bank of LaPlace*, 954 F.2d 278, 281 (5th Cir. 1992) (citations omitted) states "'In order to avoid dismissal for failure to state a claim, a plaintiff must plead specific facts, not mere conclusory allegations...' [a]nd, '[c]onclusory allegations and unwarranted deductions of fact are not admitted as true' by a motion to dismiss." However, the United States Supreme Court in *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 513 (2002), recently admonished the lower courts that a plaintiff is not required to plead facts supporting each element of his claim or legal theory. Rather, a complaint is sufficient if it "give[s] the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests." *Id. Schexnayder*, *supra*, is thus indicative of the proper liberal construction to be given pleadings, not the older cases cited by defendants. *See also Higgs v. Carver*, 286 F.3d 437, 439 (7th Cir. 2002) (interpreting *Swierkiewicz* to mean that "[a] complaint that complies with the federal rules of civil procedure cannot be

dismissed on the ground that it is conclusory or fails to allege facts"); *Greenier v. Pace, Local No. 1188*, 201 F. Supp. 2d 172, 172 (D.Me. 2002) ("*Swierkiewicz* clearly indicates that it is not fatal to plaintiff's case that some of his allegations at this stage may be legal conclusions rather than facts.") Liberal discovery rules and summary judgment motions, not motions to dismiss, should be used to define disputed facts and issues and to dispose of unmeritorious claims. *See Swierkiewicz*, 534 U.S. at 513. At this point in the litigation, defendants are on notice that punitive damages are being sought and can reasonably be expected to formulate an answer to the claims.

Some defendants argue that their individual factual situation is such that they could not possibly be liable for punitive damages. Taking all plaintiff's allegations as true and resolving all doubts in its favor, it is clear that plaintiff could prove a set of facts in support of its claims. Defendants' arguments indicate that an answer to the claims is possible. Those arguments should be reasserted after an appropriate discovery period to allow the production of evidence.

**C.    Defendant Meridian's Motion to Dismiss**

*1.    Punitive and Strict Liability Claims*

The preceding analysis of the challenge to punitive claims applies to Meridian's punitive and strict liability challenge as

well.

> 2.   *Mineral Code article 136 Notice Requirement*

Meridian takes issue with plaintiff's allegation that defendants failed to operate as prudent operators. *See* 2d Am. Complaint ¶ 25(d). Meridian concludes that because no specific provision of the lease is cited this claim must be brought pursuant to Louisiana Mineral Code article 136. Louisiana Mineral Code article 136 requires that "[i]f a mineral lessor seeks relief from his lessee arising from drainage of the property leased or from any other claim that the lessee has failed to develop and operate the property leased as a prudent operator, he must give his lessee written notice of the asserted breach to perform and allow a reasonable time for performance by the lessee as a prerequisite to a judicial demand for damages or dissolution of the lease." LA. REV. STAT. § 31:136. Meridian argues that because the complaint fails to allege that notice was given, article 136 bars plaintiff's claims for damages for failure to operate as a prudent administrator.

The pith of this argument is fairly narrow in that it attacks one subparagraph of count two of the complaint by assuming that it claims breach of duties imposed by the Mineral Code. The complaint itself gives no indication that it seeks damages for breach of the obligation, implied in every contract,

to develop the lease as a prudent operator. First, the claim is raised under "Count Two: Negligent/Intentional Conduct" and not under "Count One: Breach of Contract." Second, the general allegations of the complaint do not concern the failure to develop the land in an economically reasonable way, and so do not seem to implicate the requirement that the lessee be put in default for passive breach. *See* Comments to La. Mineral Code article 136 (explaining that under *Williams v. Humble Oil & Refining Co.*, 432 F.2d 165 (5th Cir. 1970), active breach does not require putting in default) and Comments to La. Mineral Code article 122 (detailing how the prudent operator standard has been applied to mineral leases in only four situations, all concerning failure to protect or develop economic gains). Rather, plaintiff complains of damage to the property in the sense of contamination and the creation of hazardous conditions. These claims sound in tort, not in implied contractual rights. Plaintiff's choice of the words "prudent operator" are not a magic formula invoking the procedural requirements of Mineral Code article 136.

The same caution against dismissal for failure to state specific facts is in order here as above. Discovery should be allowed to commence and the issues should be focused before determining that plaintiff failed to make a written request that is legally required for it to succeed in its claims.

13

3.   *Groundwater Contamination Notice Requirement*

Meridian seeks dismissal of plaintiff's claims for damages resulting from groundwater contamination because of a statutory requirement that the Louisiana Department of Environmental Quality (LDEQ) and the Louisiana Department of Natural Resources must be notified upon the filing of a claim to recover damages for the evaluation and remediation of pollution to usable groundwater. *See* LA. REV. STAT. § 30:2015.1.B. The complaint alleges under count two that "[d]efendants knew or should have known their exploration and production would result in contamination, injury, and damage to Dixie Rice's soils, groundwater, and surface water." The complaint does not indicate that notification was given to the state agencies.

Meridian's argument is largely, if not wholly, off point. First, the land likely does not contain "usable groundwater" implicating the statute. The statute defines "usable groundwater" as Groundwater Classification I or Groundwater Classification II in the LDEQ's regulations under the Risk Evaluation Corrective Action Program (RECAP). *See* LA. REV. STAT. § 30:2015.1(J)(1). Groundwater Classifications I and II are basically public and private drinking water aquifers that yield at least 800 gallons per day with a maximum Total Dissolved Solids content of 10,000

14

mg/L.[1] These numbers represent the poorest quality aquifer that can still be considered Groundwater Classification II under the statute. The complaint indicates that the land at issue is swampland in Terrebone Parish, Louisiana. Clearly plaintiff could prove a set of facts that would allow it to succeed in its claims without having notified the state agencies. As with the Mineral Code argument above, plaintiff's choice of the word "groundwater" in its complaint does not automatically invoke the procedural requirements of LA. REV. STAT. § 30:2015.1.B.

4.  *Barnsdall Lease Claims*

Meridian argues that the provision in the Barnsdall lease relied on by plaintiff does not provide for generalized damages. The provision reads: "When requested by lessor, lessee will bury pipelines below the ordinary plow depth and in such a manner as will cause no interference to drainage and pay damage caused by lessee's operations." Meridian argues that the other leases provide non-exclusive generalized lists of the types of damages contemplated, whereas the Barnsdall lease is tied to plow depth and drainage interference. Meridian offers no argument or law to support its interpretation.

Plaintiff did not specifically address this argument.

---

[1]*See* RECAP regulations at http://www.deq.louisiana.gov/ portal/Portals/0/technology/recap/2003/RECAP%202003%20Text%20-%20 final.pdf (last accessed January 27, 2006).

15

The language of the lease very generally covers "damage caused by lessee's operations." Although this appears in the same sentence as the requirements for pipeline burial, it may or may not be explicitly tied to the pipeline burial. The entire Fourth Clause of the Barnsdall lease is a jumble of rights and obligations. Without further development of the legal and factual issues it is not clear that plaintiff can prove no set of facts that would entitle it to relief.

    *5.   All Remaining Claims*

Meridian makes a final argument that all remaining claims should be dismissed for failure to state a claim. Meridian argues that because the complaint failed to plead specific facts sufficient to satisfy the elements of a negligence claim, it fails to state a claim. The above discussion on the sufficiency of notice pleading applies to this argument.

**CONCLUSION**

Plaintiff's complaint is sufficiently intelligible to put defendants on notice as to the nature of its claims. Although plaintiff has failed to allege many specific factual elements of its claims, those are not required under Rule 8, and defendants can reasonably be expected to respond. The motions to dismiss fail because plaintiff has in each instance stated a claim upon which relief can be granted. Discovery followed by motions for

16

summary judgment will be the proper tools to prune the case if that becomes appropriate.

Accordingly,

**IT IS ORDERED** that **HEC Petroleum, Inc. and Dow Chemical Co.'s Motion to Strike Amended Complaint** (Rec. Doc. 88); **Apache Corp. and APD Co.'s Motion to Dismiss Plaintiff's Second Amended and Restated Complaint** (Rec. Doc. 90); **Kerr-McGee Chemical Worldwide's Motion for More Definite Statement** (Rec. Doc. 91); **Shell Oil Co.'s Motion for More Definite Statement** (Rec. Doc. 93); **Noble Energy, Inc.'s Motion to Dismiss Case or to Strike Amended Complaint** (Rec. Doc. 104); **ConocoPhillips Co.'s Motion to Dismiss Case or for a More Definite Statement** (Rec. Doc. 109); and **Meridian Resource & Exploration's Motion to Dismiss Second Amended Complaint** (Rec. Doc. 114) are **DENIED.**

New Orleans, Louisiana this the 1st day of February, 2006.

CARL J. BARBIER
UNITED STATES DISTRICT JUDGE

17